[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has moved for summary judgment claiming that the products liability statute 52-572n provides the exclusive remedy for the plaintiff's breach of warranty/failure to warn cause of action and that she has failed to comply with 52-577a
which sets forth a three year statute of limitations within which all product liability claims must be brought. The plaintiff has argued that this case is not a products liability claim but rather is a claim under C.G.S. 42a-2-725. A statutory cause of action under the Uniform Commercial Code must be brought within four years after the cause of action has CT Page 6657 occurred. Id. She relies on this statute despite her claim for relief which seeks punitive damages and attorney's fees in accordance with C.G.S. 52-240a b, each of which pertains solely in the context of a products liability action.
The defendant in response maintains that C.G.S. 52-572n
was meant to be the exclusive remedy for claims falling within the scope. See Winslow v. Lewis-Shepard, Inc., 212 Conn. 462
(1989). The plaintiff argues that that case and its aftermath should be read narrowly to govern those situations wherein a plaintiff raises in a multiple count complaint common law theories of negligence, breach of warranty, etc. The question raised by the motion then is whether the Statute of Limitations as to products liability claims, 52-577a, setting up a three year limitation of action, applies, or whether 42-2-725 of the Uniform Commercial Code, setting up a four-year limitation commencing from the date the cause of action has accrued, is the applicable statute.
This court agrees with the plaintiff that C.G.S. 57-572n does not per se eliminate a cause of action under 42a-2-725. Indeed, subsection (c) of the product liability statute specifically references title 42a, the Uniform Commercial Code.[1]
See also Utica Mutual Insurance Co. v. Denwat Corp.,778 F. Sup. 592, 596 (D.Conn. 1991).
The purpose behind the act was to merge the numerous causes of action that have been asserted in common law product liability actions and to create one statutory cause of action, embracing the various theories of liability. Winslow v. Lewis-Shepard, supra at 470. While no Connecticut case addresses the question raised today, there are some federal decisions that raise the question of whether the products liability act bars actions pled simultaneously under CUTPA. In West Haven School District v. Owens-Corning Fiberglass Corp., Civ. No. H-85-1056 (AHN), Judge Nevas developed a "functional test" to determine whether the CUTPA claim is coextensive with the product liability claim. "[I]f the cause of action being pressed . . . is essentially identical — in wrongs asserted and in relief sought — with that being pursued under the PLA, then it comes within the statute's scope and must be precluded." Ruling at p. 6 — A similar test was held in Gnazzo v. G.D. Searle Co., H-90-381 (PCD), Ruling on Motion to Dismiss (November 29, 1990) (wherein the Court held that because no additional allegations existed which placed the plaintiff's claim outside the PLA's broad scope, the motion was granted.) and in Utica Mutual Insurance Co. v. Denwat Corp., supra at 598 (wherein the Court found that the particular claims did fall outside the preclusive scope of the PLA and so denied the motion to dismiss the CUTPA claim.) CT Page 6658
All of the above cases dealt with multiple count complaints. Nevertheless, the principals set forth in the above cases extend to situations wherein the plaintiff in a one count complaint makes allegations that would otherwise fall within the product liability act's purview. The allegations set forth in plaintiff's complaint do just that. (Complaint paras. 3a-h) Additionally, the plaintiff has claimed damages that can only be claimed in connection with a products liability claim. Therefore, at a glance, a rose is still a rose.
There is an even more obvious problem, however, with the plaintiff's position. Conn. Gen. Stat. 42a-2-725 is an action for breach of contract with which the plaintiff had no privity.[2]
She was not the buyer of the product in question and was not the one to enter into any agreement. (See C.G.S. 42a-1-201(9)(11)) She therefore cannot avail herself now of the Uniform Commercial Code's statute of limitations.
The second argument advanced by the plaintiff raises the issue of whether the defendant fraudulently concealed the plaintiff's cause of action, thereby tolling the statute of limitations pursuant to Conn. Gen. Statutes 52-595.[3] The plaintiff argues that the defendant, in specific Mr. DeFranco "in his capacity as a corporate officer, made significant misrepresentations so as to conceal a cause of action against the defendant." (Plaintiff's Brief in Opp. p. 5) These alleged misrepresentations caused the plaintiff to look to the postal employees whom the defendant claimed misapplied the floor finish manufactured by the defendant which it claimed caused plaintiff's injuries. During the deposition of DeFranco, taken in connection with the plaintiff's federal suit against these postal employees, he blamed them for misapplying his company's floor finish (See Plaintiff's Brief in Opp. pp. 5-6). He later testified at trial that their failure to follow directions was not fatal. The plaintiff claims these misrepresentations fraudulently concealed his cause of action and resulted in the plaintiff's delay in filing an action.
The problem for the plaintiff however is her failure to specifically raise this notion. She points to paragraphs 3 d and e of her complaint as being sufficient allegation of fraudulent concealment as required by Beckenstein v. Potter and Carrier, 191 Conn. 150, 163 (1983). (See Plaintiff's Supplemental Brief in Opp. p. 2).
However, the allegations set forth in those paragraphs relate to the alleged misrepresentations about the product's safety and to the lack of warning on the product. These serve as the basis for the cause of action and say nothing about CT Page 6659 fraudulent concealment. Therefore, in the absence of sufficient pleading to raise this issue, it is not before the court as a material fact to be left open for consideration.
The third argument raised by the plaintiff in opposition to the defendant's motion of summary of judgment is that the defendant's failure to warn of its products dangerousness serves as a continuing defect/course of conduct which defeats the defendant's statute of limitations defense because "when the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." Handler v. Remington Arms Co., 144 Conn. 316, 321
(1957). In Handler, the court held that the sale of a defective cartridge, without indicating the danger on the label, was a continuing omission of a duty. In Giglio v. Conn. Light Power Co., 180 Conn. 230 (1980), the Court ruled that the defendant's failure to give an adequate warning that a furnace it had converted gave rise to an unreasonably dangerous condition constituted a continuing defect. Therefore, the Court found that suit, more than eight years after the completion of the furnace conversion, was not barred by the statute of limitations (which at that time extended eight years) (See P.A. 79-483 3).
These cases reflect the concern by the Court for prospective plaintiffs who are unaware of the problem with a product which was sold, produced, etc. long before injury caused by the product is sustained. By holding the party responsible for issuing proper warnings accountable for as long as it fails to warn of its product's dangerous propensities through this "continuing course of conduct" theory, the Court shows sensitivity to unsuspecting persons who fail to discover the problem with the product more than ten years from the date the defendant parted with its possession or content. See Beckenstein v. Potter Carrier, Inc., supra at 161-162.
However, in this case this doctrine offers no greater protection to the plaintiff. The injury occurred on November 13, 1986 but the suit was not instituted until November 1990. The date the defendant last parted with the product is not the date which the defendant claims triggers the time within which suit should have been instituted. Rather, the date of the injury is the date which the defendant seeks to have trigger litigation. Certainly, at the point of injury, the plaintiff was put on notice as to the potential problems with the product. The furnace in Giglio had been converted more than eight years prior to the commencement of suit; however, if the injury had occurred within eight years of the conversion, there would have been no need to rely on this continuing course of conduct theory. Indeed, the injury itself would have been sufficient to cause the plaintiff to question the products safety. CT Page 6660
The theory proposed by the plaintiff only makes sense when the parting of possession or control of the product occurs more than ten years prior to the injury. Otherwise, plaintiff could forever avoid the statute of limitations despite actual injury (and thus notice) until the defendant altered its warnings and thus inferentially admitted liability for its earlier failure to warn that caused the injury in the first place.
Consistent with the earlier parts of this opinion the court finds that suit was not brought timely within the three year statute of limitations pursuant to C.G.S. 52-577a. Therefore, the motion for summary judgment is granted.
JOETTE KATZ, JUDGE