[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Amoco Oil Company (Amoco), filed a four count complaint against the defendant, The Liberty Auto and Electric Company (Liberty), after the installation of certain underground CT Page 8868 storage tanks and associated equipment by Liberty. Count one alleges that Liberty is contractually bound to indemnify Amoco for any loss or injury associated with the installation of the tanks. Count two incorporates the allegations of the first count and further alleges that Liberty negligently installed the storage tanks. Count three alleges breach of contract in that Liberty failed to install the tanks in a workmanlike manner. The fourth count alleges that, as a result of the installation, assembly, fabrication or distribution of the tanks, Liberty is strictly liable pursuant to the provisions of section 52-572n
(c), the Connecticut Product Liability Act (CPLA).
Liberty moved to strike the fourth count of complaint on the ground that it alleges a commercial loss and, as such, is prohibited by the CPLA. That motion was denied, the court ruling that the "[fourth] count alleges a `property damage' claim under the CPLA, not a commercial loss . . ."
Liberty also filed an apportionment complaint against Bethlehem Steel Corporation (Bethlehem), seeking apportionment of negligence pursuant to sections 52-572h and 52-102b of the General Statutes. The apportionment complaint re-alleges the claims made in Amoco's complaint and further alleges that if Liberty is found to be negligent, then the damages alleged were caused by Bethlehem's negligence in that it failed "to manufacture, assemble, fabricate and construct a usable and leakproof storage tank . . . to inspect or adequately inspect the underground storage tank prior to delivery, . . . [and] failed to provide a tank that complied with industry standards."
Bethlehem has filed a motion to strike the apportionment Complaint on the ground that it is insufficient as a matter of law because the plaintiff's complaint alleges harm caused by a product manufacturer and, therefore, any attempt to bring Bethlehem into this action for a determination of its share of liability must be done pursuant to the provisions of the CPLA. Moreover, since it is a product manufacturer, Bethlehem contends that section 52-572h is inapplicable because section 52-102b
allows a defendant to seek apportionment of liability only among those persons who may be liable pursuant to section 52-572h.[1]
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in CT Page 8869 the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Waters v. Autuori,236 Conn. 820, 825 (1996).
Liberty claims that the exclusivity if the CPLA does not pertain here because no damages are being sought from Bethlehem and the fact that Amoco has alleged negligence against Liberty opens the procedural door of section 52-102 to permit it to introduce the negligence of Bethlehem in order that a jury can consider each defendant's proportionate share of negligence.
Section 52-572n (a) provides that: "A product liability claim . . .may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Section 52-572m states, in part, that: "(a) `Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. (b) `Product liability claim' includes all claims or actions brought for . . . property damage caused by manufacture, construction, design, formula, preparation, assembly, installation, testing warnings, instructions, marketing, packaging or labeling of any product. `Product liability claim shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence. . . ."
The CPLA "provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." Winslowv. Lewis-Shepard. Inc., 212 Conn. 462, 463 (1988).[2] "[T]he theory of strict liability, warranty, negligence and contract . . . would all be merged into one cause of action which has been created by statute. . . . [W]e're doing away with the multiple count [complaint] that usually takes place in this kind of law suit. That is counts dealing with negligence, with breach of contract, with warranty and with strict liability" Id., at 470-471, quoting 22 S. Proc., Pt. 145, 1979 Sess., p. 4639. In an earlier ruling, this court found that Amoco's cause of action sounded in product liability. (order of the court, March 3, 1997.). "The legislature, when defining a product liability claim, directs that the negligent manufacturing, packaging, inspecting, warning, etc. of a product shall thereafter be considered as a `product liability claim'. . . ." Paul v. McPheeElectrical Contractors, Superior Court, judicial district of New CT Page 8870 London at Norwich, Docket No. 108367 (May 3, 1996) (17 Conn. L. Rptr. 134) (Walsh, J.)
Amoco's claim of negligence is more properly treated as a theory for recovery pursuant to the CPLA rather than a distinct common law cause of action sounding in negligence. Liberty cannot, therefore, avail itself of the provisions of section52-102b since section 52-572h is not applicable to product liability actions. Accordingly, Bethlehem's motion to strike the apportionment complaint is granted.